## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHEILA DUGAN, individually and as next friend on behalf of her minor children John Doe 1, John Doe 2, and Jill Doe 1,**<br>5208 Albemarle Street<br>Bethesda, MD 20816<br><br>**MATTHEW JOHNSON, individually and as next friend and on behalf of his minor children John Doe 3, John Doe 4, and Jill Doe 2,**<br>5608 Grove Street<br>Chevy Chase, MD 20815<br><br>  *Plaintiffs*,<br><br>  v.<br><br>**MURIEL BOWSER, in her official capacity as Mayor of the District of Columbia,**<br>John A. Wilson Building<br>1350 Pennsylvania Avenue NW<br>Washington, DC 20004<br><br>**DISTRICT OF COLUMBIA,**<br>c/o Karl A. Racine, Attorney General<br>400 6th Street NW<br>Washington, DC 20001<br><br>**LAQUANDRA NESBITT, in her official capacity as Director for the D.C. Department of Health,**<br>899 North Capitol Street NE<br>Washington, DC 20002<br><br>**D.C. DEPARTMENT OF HEALTH,**<br>c/o Phillip Husband, General Counsel<br>899 North Capitol Street NE<br>Washington, DC 20002<br><br>  *Defendants*. | **VERIFIED COMPLAINT**<br><br>Civil Action No. <u>1:22-cv-00625</u> |

## INTRODUCTION

1.      This Court previously stopped Defendant Mayor Muriel Bowser from unconstitutionally burdening religious exercises through her invocation of emergency powers.  Order, *Roman Cath. Archbishop of Wash. v. Bowser*, 1:20-cv-03625-TNM (D.D.C. Mar. 25, 2021) (ECF No. 39) (issuing a preliminary injunction); Order, *Capitol Hill Baptist Church v. Bowser*, No. 1:20-cv-02710-TNM (D.D.C. Oct. 9, 2020) (ECF No. 44) (same).

2.      The same judicial intervention under the First Amendment and the Religious Freedom Restoration Act ("RFRA") is yet again needed to stop Defendants Mayor Bowser, the District of Columbia, Director LaQuandra Nesbitt, and the D.C. Department of Health (collectively, "Defendants") from substantially burdening *and* unequally treating the plaintiff-parents' religious exercise of sending their children to a Catholic school in the District in comparison to the litany of comparable secular and other religious activities.

3.      The Supreme Court has made it abundantly clear that government mandates violate the First Amendment "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).  "Comparability is concerned with the risks various activities pose, not the reasons why people gather." *Id.*  "Where the government permits other activities to proceed with precautions," absent a compelling showing otherwise, "precautions that suffice for other activities suffice for religious exercise too." *Id.*  "It is no answer that a State treats some comparable secular . . . activities as poorly as . . . the religious exercise at issue." *Id.*

4. In addition to the First Amendment protections, this Court has separately applied RFRA to enjoin Defendant Mayor Bowser. *See Roman Cath. Archbishop of Wash. v. Bowser*, 531 F. Supp. 3d. 22, 34–37 (D.D.C. 2021); *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 292–96 (D.D.C. 2020).

5. On February 14, 2022, Defendant Mayor Bowser announced that she would lift her mandate to wear masks indoors for virtually all activities in the District, such as crowded bars and restaurants, concert halls and sports venues attended by thousands of people, clubs, gyms, shopping centers, other businesses, and even strip clubs. *See* Ex. 1, at 3 (Mayor's Order 2022-029, § III.1 (Feb. 14, 2022)).

6. And yet, the children who attend Catholic schools in the District must continue to wear masks in their classrooms all day. *See id.* at 3–4 (Mayor's Order 2022-029, § III.2).

7. Defendants' mandate requiring the children to wear masks in their Catholic school classrooms—while allowing children and adults to not wear masks nearly everywhere else—is arbitrary, unscientific, and irrational. Under Defendants' policy, a child could sit for hours at the Wizards game at the crowded Capitol One Arena without wearing a mask, but she must cover her face for seven hours a day, the moment she steps into her Catholic school building.

8. Defendant Mayor Bowser's decision to continue the mask mandate in parochial schools is in fact an extreme outlier. Government officials across the Nation—Federal, State, and local—are lifting indoor mask mandates as they feel

confident that individuals can return to their normal life after more than two years of learning to effectively mitigate COVID-19.

9. Congress—located here in the heart of the District of Columbia—lifted its mask mandate for the Members of Congress and their Staff. The White House did the same for its staff and others visiting its premises. And on March 1, 2022, President Biden gave his State of the Union Address to the Joint Session of Congress without wearing a mask.

10. The vast majority of the States and local governments did not find it necessary to impose an indoor mask mandate even at the height of the Omicron surge to begin with. And even the States that did impose such restrictive indoor mask policies—like California, Washington, Oregon, Illinois, and New York—have all announced that they would drop those mandates, including for school-age children.

11. Plaintiffs Sheila Dugan and Matthew Johnson (collectively, "Plaintiffs" or "the Parents") exercise their Catholic faith by sending their children to a Catholic school and providing their children faith-based formation and education. They send their respective children to a Catholic school located in the District, which they have found to be the most suitable school given their children's stage in life.

12. Yet the Catholic school they have chosen for their children's formation and education is subject to a mask mandate, even though a litany of comparable secular *and* religious activities—such as eating in a restaurant, working out at the gym, attending a concert and sporting event, going to the movies, or attending Mass—are not subject to Defendants' mask mandate.

13.     Defendants' mask mandate is void under the First Amendment, because it is neither generally applicable nor neutral toward the Parent's religious exercise of providing Catholic formation and education for their children.  Under *Tandon*, "[i]t is no answer that the [District] treats some comparable secular . . . activities"—like public and public charter schools—"as poorly as . . . the religious exercise at issue," Catholic education and formation.  141 S. Ct. at 1296.  Because sending children to a Catholic school is a religious exercise, and because Defendants treat nearly all secular activities, and even certain types of religious exercise, in the District more favorable than the Parents' religious exercise, the mask mandate is neither generally applicable nor neutral.

14.     In addition to unconstitutionally burdening Catholic schools and treating them unequally, Defendants' prolonged mask mandate has had substantially detrimental effects on—and is continuing to significantly impede—the Parents' children's Catholic formation and education.

15.     The masks—although they may seem trivial for most adults who only had to wear them for short periods time before and ***now*** do not even have to wear them almost anywhere in the District—impose a substantial and significant burden on the children's religious education.

16.     The Parents' children have to wear a mask for ***seven hours*** a day.  The masks have led to frequent headache and occasional dizziness for some of their children.  The children complain of significant difficulty in breathing and of physical discomfort throughout class, which substantially detracts from class instructions.

The children have faced threatened or actual disciplinary actions by some of the school staff, which also substantially detracts from their formation.  The children have complained of difficulty in hearing and understanding their teachers and peers. The prolonged mask use has caused difficulty in developing phonic, social, and emotional skills, which are not only critical to schools generally but also are indispensable to the whole point of a Catholic school, learning to communicate and embody God's love for others.

17.    The Parents' children are not only missing out on the fullness of their religious education and formation but also have pleaded not to be sent to the school or have lost joy and interest in school.  All of these impacts substantially burden and detract from the Parents' and children's religious exercise of formative Catholic education.

18.    Defendants' mask mandate also impermissibly infringes on the Parents' fundamental right as parents to direct the upbringing of their children.

19.    The Parents have continuously engaged—and are continuing to engage—with the District officials to lift the mask mandate or to grant an exception for them, but to no avail.

20.    Therefore, the Parents respectfully seek appropriate declaratory and injunctive relief—and any other appropriate relief—to vindicate their free exercise and parental rights protected by the First Amendment, the Fifth Amendment, and RFRA.

6

21.    Defendants' school mask mandate is neither generally applicable nor neutral toward Catholic schools.   And the mask mandate imposes a substantial burden on the Parents' and the children's exercise of their Catholic faith.   Moreover, Defendants' mask mandate seriously infringes on the Parents' fundamental right to direct the religious upbringing and education of their children.

22.    "[E]ven in a pandemic, the Constitution cannot be put away and forgotten," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), and "***especially*** in times of crisis[,] . . . [courts] have a duty to hold governments to the Constitution," *S. Bay United Pentacostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Statement of Gorsuch, J.).   And courts "must survey meticulously the circumstances of governmental categories to eliminate . . . religious gerrymanders," like Defendants have done so here.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (quoting *Walz v. Tax Comm'n of N.Y.C.*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring)).   The Court's intervention is needed.

### PARTIES

23.    Plaintiff Sheila Dugan is a resident of Maryland.  She sends her minor children John Doe 1, John Doe 2, and Jill Doe 1 to Blessed Sacrament School in the District of Columbia.   As a result, her children and their school are subject to Defendants' mask mandate.

24.    Plaintiff Matthew Johnson is a resident of Maryland.   He sends his children John Doe 3, John Doe 4, and Jill Doe 2 to Blessed Sacrament School in the

District of Columbia.   As a result, his children and their school are subject to Defendants' mask mandate.

25.   Defendant Muriel Bowser is the Mayor of the District of Columbia. Mayor Bowser issued Mayor's Order 2022-029 on February 14, 2022, which substantially burdens the Catholic schools in the District and treats them unequally by imposing a mask mandate on them while lifting the mask mandate for most aspects of life in the District.

26.   Defendant the District of Columbia is a municipal corporation and is responsible for the policies implemented through its officials and agents.

27.   Defendant LaQuandra Nesbitt is the Director of the D.C. Department of Health.   Under the Mayor's Order 2022-029, Director Nesbitt has unfettered, discretionary authority to grant exceptions to the mask mandate.

28.   Defendant the D.C. Department of Health implements the District of Columbia's health policies—including the mask mandate—and has the authority to promulgate regulations and exceptions to the mask mandate under the Mayor's Order 2022-029.

**JURISDICTION & VENUE**

29.   The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983, because the Parents are alleging past and ongoing violations of their (and their children's) rights under the Constitution and RFRA.  The Court has jurisdiction to award attorneys' fees and costs under 42 U.S.C. § 1988.

30.   The Court has general personal jurisdiction over Defendants because they reside in the District of Columbia.  And the Court also has specific personal

jurisdiction over Defendants because this case arises out of Defendants' contact with the forum.

31.    Venue lies in this judicial district under 28 U.S.C. § 1391(b).    All Defendants reside in this judicial district.  Moreover, a substantial part of the events and omissions giving rise to the Parents' claims—such as the implementation and enforcement of the Mayor's Order 2022-029—occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *Defendants continue to impose a restrictive mask mandate that substantially burdens Catholic schools, treats them unequally, and harms school children.*

32.    After more than two years of dealing with COVID-19, the Nation has learned to deal with it effectively.  The Nation learned more about COVID-19, an increasing number of people developed natural immunity, and anyone can easily access vaccination if they so desire.

33.    The risk of severe symptoms among children has always been found to be low.  Children accounted for only 0.1 to 1.5% of total hospitalizations since the beginning of the COVID-19 spread and only 0.26% of all COVID-19 deaths.  *See* Ex. 2, at 1 (Lt'r from Ass'n of Indep. Schs. of Greater Wash. to Mayor Bowser (Mar. 3, 2022)).

34.    Schools have also been found to be safer than the community at large. *Id.*  In addition, schools are able to set up effective safety protocols such as testing, frequent handwashing, hand-sanitation stations, and enhanced ventilation and air purifications in classrooms.  *Id.*

35.    Even at the height of the Omicron spread in late 2021, the vast majority of the States did not find it necessary to impose a mask mandate on schoolchildren.

36. The District of Columbia was one of the rare and few jurisdictions that chose to impose a District-wide mask mandate for indoor establishments, including schools.

37. On December 20, 2021, Defendant Mayor Bowser yet again invoked emergency powers and imposed the indoor mask mandate. *See* Ex. 3, at 4 (Mayor's Order 2021-147, § IV.2 (Dec. 20, 2021)).

38. This December 20 Order imposed a mask mandate on a large swath of indoor places in the District, specifically including "private, parochial and independent schools." *Id.*

39. The December 20 Order categorically excepted enclosed business office spaces where the public was not permitted to enter and persons gathered at restaurants and taverns while eating and drinking. *See id.* Consequently, the December 20 Order allowed rooms full of people to congregate without masks for hours at a time if they were in business office spaces or sitting at restaurants or taverns. In addition, the December 20 Order gave Defendant the D.C. Department of Health an unfettered discretion to "authorize exceptions to [the Order]." *Id.*

40. "Any individual or entity that violates [the] Order" is subject to civil and administrative penalties, such as $1,000 fine per violation. *Id.* at 5 (Mayor's Order 2021-147, § VIII.3); *see also* D.C. Code § 7-2307 (delineating punishments for violations of emergency executive order).

41. But this kind of restrictive measure became even more rare throughout the Nation, especially in the recent weeks.

42. Congress lifted its own mask mandate for its Members and Staff. And so did the White House for its premises. On March 1, 2022, President Biden—without wearing a mask—gave his State of the Union Address to the Members of Congress in a virtually mask-less room.

43. As of March 1, 2022, some of the few States that held onto the restrictive mask policies—such as California, Oregon, New York, Washington, and Illinois—similarly announced that they would drop their school mask mandates.

44. The District's neighbor, Virginia, did not impose a mask mandate on private schools in late 2021 or early 2022 and removed the public school mask mandate because masks "inhibit the ability of children to communicate, delay language development, . . . impede the growth of emotional and social skills," and cause "difficulty breathing and discomfort." Va. Gov. Exec. Order No. 2 (Jan. 24, 2022).

45. The District's other neighbor, Maryland, also did not impose a mask mandate for private schools and lifted the statewide public school mask mandate. *See, e.g.*, *Maryland education board votes to lift statewide mask mandate, return decision to local school systems*, Washington Post (Feb. 22, 2022), https://www.washingtonpost.com/education/2022/02/22/mask-mandate-maryland/.

46. Defendant Mayor Bowser, however, remains one of the last remaining holdouts for school mask mandates, and one of the few who imposed those mandates on private schools in the first place.

47.    Her latest order—the Mayor's Order 2022-029 (Feb. 14, 2022)—substantially burdens Catholic schools and treats them unequally by continuing to require schoolchildren who attend those schools to wear a mask.  *See* Ex. 1, at 4 (Mayor's Order 2022-029, § III.2.b).

48.    This makes little sense not only in light of the changed guidance and policies by other Federal and State officials, but also given the Mayor's February 14 Order itself.

49.    Mayor Bowser's February 14 Order lifts the mask mandate for a litany of other activities that are comparable to attending school.  It exempts from the continued mask mandate:  restaurants, bars, taverns, sports and entertainment venues, gyms, recreation centers, indoor athletic facilities, houses of worship, grocery stores, pharmacies, big box stores, other retail establishments, and other businesses. *Id.* at 3 (Mayor's Order 2022-029, § III.1).

50.    In addition to the categorical exemptions listed above, the February 14 Order also continues to give Defendant the D.C. Department of Health an unfettered discretionary ability to "authorize exceptions to [the Order]."  *Id.* at 4 (Mayor's Order 2022-029, § III.3).

51.    The Mayor's February 14 Order also states that "[a]ll enforcement authorities previously cited in prior Mayor's Orders continue in full force and effect," *Id.* at 6 (Mayor's Order 2022-029, § VIII), meaning that any person or entity violating the mask mandate is subject to a $1,000 fine per violation.  *See* D.C. Code § 7-2307.

***The Parents send their children to a Catholic parochial school within the District.***

52.     The Parents send their children to a Catholic parochial school within the Archdiocese of Washington, which serves approximately 655,000 Catholics in the District of Columbia and surrounding Maryland counties, including Montgomery, Prince George's, Charles, Calvert, and St. Mary's Counties.

53.     Plaintiff Dugan sends her children John Doe 1, John Doe 2, and Jill Doe 1 to Blessed Sacrament School in the District of Columbia.

54.     Plaintiff Johnson sends his children John Doe 3, John Doe 4, and Jill Doe 2 to Blessed Sacrament School in the District of Columbia.

55.     The Parents consider the provision of Catholic education and spiritual formation of their children to be a critical part of their Catholic faith.

56.     The Catholic Church teaches that "[p]arents have the first responsibility for the education of their children." *The Catechism of the Cath. Church* ¶ 2223. The most critical part of the parents' duty to educate is to "teach[ ] their children to pray and to discover their vocation as children of God." *Id.* ¶ 2226.

57.     Selecting a parish and parochial or other schools is an important part of the Catholic faith for a parent, because "[t]he parish is the Eucharistic community and the heart of the liturgical life of Christian families," and "it is a privileged place for the catechesis of the children and parents." *Id.* ¶ 2226.

58.     The Catholic Church teaches that "parents have the right to choose a school [for their children] which corresponds to their own convictions." *Id.* ¶ 2229.

13

Furthermore, the Church teaches that parents have "the duty of choosing schools that will best help them in their task as Christian educators." *Id.*

59.    In keeping with their Catholic faith, the Parents each determined that Blessed Sacrament School in the District was the best school for the Catholic education and faith formation of their children given their current station in life.

60.    The mission of Blessed Sacrament School is "to recognize the unique talents God has bestowed on each of [its] students" and "to assist parents . . . in the formation of the 'whole child,' helping each student grow academically, spiritually, morally, emotionally and physically."  Blessed Sacrament Sch., *About* (last visited Mar. 7, 2022), https://www.bsstoday.org/about.

61.    The School's "primary goal is to direct the child toward a mature Christian life," which is accomplished through "growth into a life of full participation within the Christian community . . . within the school setting," "[t]he Eucharistic celebrations, communal prayer, and participation in sacramental liturgical celebration," all of which are designed to guide the students "toward a mature relationship with our Savior, Jesus Christ." *Id.*

62.    The School states that the "strongest tool" it has is the "experience of community, unity, and dedication within the faculty and staff."  *Id.*  And it emphasizes the need for "an atmosphere of friendliness throughout the school," "[a] sense of family," "a spirit of caring," and "an attitude of Christian love."  And because it sees itself as "a Christian educational facility, [it] see[s] [itself] as journeying

14

together to the future, a future ripe with hope because [it] walks with [others] as [they] walk with Christ." *Id.*

63.    Education in a parochial or independent Catholic school is critical for the children's education and formation in faith. *Cf. Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020) ("The religious education and formation of students is the very reason for the existence of most private religious schools."). The Catholic Church teaches that faith and reason complement each other. *Id.* ¶ 158. God reveals His Truth also through "reason on the human mind" so "[f]aith seeks understanding" in all branches of knowledge. *Id.* ¶ 158–59. Children communicate with teachers and students, and vice versa, throughout the school day in the course of engaging in an educational dialogue motivated by, and immersed with, their religious beliefs. *See Gordon v. DeWeese-Boyd*, No. 21-145, 2022 WL 585890, at *2 (U.S. Feb. 28, 2022) (Statement of Alito, J.) ("What many faiths conceive of as 'religious education' includes much more than instruction in explicitly religious doctrine or theology.").

64.    This communicative exercise of religion occurs not only orally but through facial expressions. Engaging in and reading facial expressions during the educational process is not only an essential component of reading, speaking, articulation, and rhetorical skills, it is also essential to the healthy social interaction and development that forms a core part of the exercise of religion in Catholic schools. Class discussion forms an essential component of learning the substantive content of

a course and of developing the ability to interact and engage with teachers and other students having different ideas and modes of expression.

65.    The Catholic educational process requires teachers to fully perceive, interact with, and encourage proper expressions and affirmations of mental, social, and spiritual health and well-being from their students, including through their facial expressions.  As Pope John Paul II said of Catholic educators, "[t]he Church needs men and women who are intent on teaching *by word and example*—intent on helping to *permeate* the whole educational milieu with the spirit of Christ."  Pope John Paul II, *Message of John Paul II to the National Catholic Educational Association of the United States* (Apr. 16, 1979) (emphasis added), https://www.vatican.va/content/john-paul-ii/en/speeches/1979/april/documents/hf_jp-ii_spe_19790416_usa-scuola-catt.html.

66.    "Catholic education is above all a question of *communicating Christ*, of helping to form Christ in the lives of others."  *Id.* (emphasis added).

67.    Masks prevent students and teachers from clearly articulating their words, from being effectively heard, from learning language skills and enunciation, and from communicating with the full range of human emotions and facial muscle groups during the education of the whole person.

68.    Masking children and teachers significantly injures socialization, emotional intelligence, mental health, and the complex relationship between words and facial features.

69. Masking blunts the education of a broad range of student personalities, from children who are shy to those who are outgoing, and a broad range of student skills, from those who struggle to speak and understand well to those who need the opportunity to excel.

70. Furthermore, masks are uncomfortable, they inhibit breathing, they get covered with moisture and mucus, they cause skin irritation and headaches, and they introduce significant unpleasantness and student irritation into an educational setting that needs to be pleasant and welcoming to enhance students' enjoyment and interest in the subjects being taught.

71. These and related burdens negatively and substantially injure the religious exercise of school children, their parents who are paying for and participating in the school community, of the teachers and other school staff, and of the school itself. In simple terms, masking significantly detracts from the Catholic formation and education.

72. The Archdiocese of Washington, which oversees the school attended by the Parents' children, does not have a mask requirement for the Catholic schools located in either the District or the Maryland counties. Maryland counties in which the Archdiocese's schools are located do not require face coverings for students attending private schools.

73. Because of the mask mandate under Mayor's Order 2022-029, however, children at Archdiocesan schools in the District of Columbia must wear masks despite the Archdiocese's lack of a mask mandate at its schools, and despite the Archdiocese's

17

statement that it is advocating with city officials to make face coverings optional for the school families in the District.

74. Relatedly, the Association of Independent Schools of Greater Washington sent a letter to Defendant Mayor Bowser on March 3, 2022, showing its support for optional mask policies for independent schools in the District. Ex. 2, at 2. The Association includes as members several independent Catholic schools that are not under the Archdiocese's direct supervision.

75. However, because of Defendants' mask policy, the Catholic schools located within the District continue to be subject to masking requirements. The children—including the Parents' children—who attend Catholic schools in the District are required to wear a masks seven hours a day.

76. The Parents' children are being significantly harmed and substantially burdened in their Catholic formation and education by Defendants' mask mandate and/or their refusal to grant an exception to Catholic schools.

77. Plaintiff Dugan's elementary-school-age son, John Doe 1, has complained of headaches that were not present before the institution of the mask mandate but only surfaced with the mask mandate. John Doe 1 has complained of difficulty in breathing because of the mask and has been reprimanded for an alleged improper mask use while exercising in physical education class. In summer of 2021, when Plaintiff Dugan explained to her son John Doe 1 that he would be required to wear a mask again in school, John Doe 1 sobbed and begged Plaintiff Dugan to not send him to Blessed Sacrament. All of these make it significantly more difficult to

pay attention in school and detract from John Doe 1's Catholic education and formation.

78.    Plaintiff Dugan is concerned that her kindergarten-age son John Doe 2's phonic skills are not on track because of his inability to see his teacher's mouth during class.  John Doe 2 has also been put on a "time out" for an alleged improper mask use during physical education class.  Plaintiff Dugan also finds John Doe 2's masks filthy and wet when he comes home and has concerns for John Doe 2's health.  John Doe 2 also has complained of difficulty in breathing because of the masks throughout the day.  All of these make it significantly more difficult to pay attention in school and detract from John Doe 2's Catholic education and formation.

79.    Plaintiff Dugan's elementary-school-age daughter Jill Doe 1 complains that the masks has made her physically uncomfortable in class all year because the masks make it much more difficult to breathe and makes her classroom feel significantly hotter.  Jill Doe 1 has been threatened to be sent out of the classroom, otherwise warned, and placed on a "time out" during physical education class for an alleged improper mask use.  Jill Doe 1 has complained of feeling significantly stressed, being without joy, and not finding school fun and normal anymore because of the mask mandate. All of these make it significantly more difficult to pay attention in school and detract from Jill Doe 1's Catholic education and formation.

80.    Plaintiff Johnson's children are similarly burdened in their education and formation by the masks.

19

81.    Plaintiff Johnson's elementary-school-age son John Doe 3 has complained that the masks make it difficult to breathe during the day, including during class instructions and activities, and that the masks reek after gym class. John Doe 3 has also complained that it feels abnormal not being able to see his classmates' and teachers' facial expressions throughout the day. All of these make it significantly more difficult to pay attention in school and detract from John Doe 3's Catholic education and formation.

82.    Plaintiff Johnson's elementary-school-age son John Doe 4 has complained that the masks are physically uncomfortable and smelly throughout the day. John Doe 4 has complained about difficulty hearing and understanding his teachers and classmates throughout the day and also of the inability to see his friends' and teachers' faces and smiles. All of these make it significantly more difficult to pay attention in school and detract from John Doe 4's Catholic education and formation.

83.    Plaintiff Johnson's elementary-school-age daughter Jill Doe 2 has also complained that the masks are physically uncomfortable and smelly throughout the day. Jill Doe 2 has also complained about difficulty hearing and understanding her teachers and classmates throughout the day and also of the inability to see her friends' and teachers' faces and smiles. All of these make it significantly more difficult to pay attention in school and detract from Jill Doe 2's Catholic education and formation.

84.    For the last several months, the Parents—along with other parents in the D.C. metro area who send their kids to parochial or independent Catholic schools

in the area—have coalesced around the efforts to demand a return to normalcy for their school-age children. The Parents have held a townhall meeting for concerned parents and engaged in advocacy and letter-writing campaigns regarding the COVID-19 restrictions on schools. One such advocacy campaign gathered approximately 1,500 signatures from parents in a letter sent to Cardinal Archbishop Wilton Gregory to adopt a mask-optional policy for the Archdiocese schools in the District and in Maryland counties. Defendants' mask mandate still applies to the schools in the District, however, preventing the Archdiocese's preferred optional mask policy from going into effect at its schools in the District.

85.     On February 28, 2022, undersigned counsel for the Parents sent a letter to Defendant the D.C. Department of Health and Defendant Director Nesbitt, requesting that the Department grant a discretionary exception for all private religious schools to the mask mandate pursuant to the Mayor's Order.

86.     On March 1, 2022, Defendant the D.C. Department of Health's General Counsel stalled by responding that it would need additional time to review the revised CDC guidance as well as the Parents' request. Counsel for the Parents responded with an email asking whether Defendant Director Nesbitt is willing to waive enforcement of the mask mandate on Catholic school children during the time it takes Defendants to reconsider the Mayor's Order.

87.     Counsel for Defendant the D.C. Department of Health did not respond. As of the filing of this Complaint, the D.C. officials have not acted on the request for exceptions for private religious schools.

88.    Notably, the Catholic University of America, which is located in the District, stated on its website as of January 1, 2022, that based on "guidance from the CDC and DC Department of Health," masks were required in indoor campus spaces. See Internet Archive (Jan. 1, 2022), https://web.archive.org/web/20220101045423/https://student-affairs.catholic.edu/coronavirus/index.html.

89.    But on March 3, 2022, the University announced that, based on "revised guidance from the CDC and DC," masks were no longer required in most of its indoor campus spaces. *See* Cath. Univ. of Am. Student Affairs, *Spring 2022 Student Life FAQ* (updated March 4, 2022), https://student-affairs.catholic.edu/coronavirus/index.html.

90.    On March 4, 2022, undersigned counsel for the Parents further inquired with Defendant the D.C. Department of Health's General Counsel regarding the Parents' own exception request. He renewed the Parents' request to relieve Catholic schoolchildren from the mask mandate in light of the Catholic University of America's statement that it was dropping its campus mask mandate based on guidance from Defendant the District of Columbia.

91.    In response, counsel for Defendant the D.C. Department of Health gave the same non-answer—that it will continue to review its policies.

92.    On information and belief, Defendants are knowingly not enforcing the mask mandate at the Catholic University of America, even though Defendants refuse

to exempt or state they will refrain from enforcing the mask mandate on the Catholic schools attended by the Parents' children.

## CLAIMS FOR RELIEF

### Count I
### 42 U.S.C. § 1983
### Violation of the First Amendment to the U.S. Constitution
### Free Exercise Clause: Not neutral or generally applicable

93.    The Parents incorporate by reference Paragraphs 1–92.

94.    Defendants' school mask mandate is neither neutral nor generally applicable and violates the Free Exercise Clause of the First Amendment.

95.    Under the Free Exercise Clause, laws that burden religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable.

96.    Government policies are not generally applicable "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296.

97.    "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.*

98.    In addition, government policies are not generally applicable "if it invites the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 881 (1990)).

99. And the First Amendment requires neutrality towards religion. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs . . . ." *Lukumi*, 508 U.S. at 532.

100. Strict scrutiny applies to government polices that are not neutral and generally applicable. *Diocese of Brooklyn*, 141 S. Ct. at 67.

101. Defendants' mask mandate is presumptively unconstitutional, because it burdens the Parents' free exercise of providing Catholic education and formation for their children.

102. Defendants' mask mandate is not generally applicable, because it treats comparable secular activities—dining out at restaurants, attending sporting events, plays, and operas, shopping, working out at the gym, and working in office spaces— more favorably than going to class at Catholic schools.

103. The mask mandate is also not generally applicable, because it gives Defendant Director Nesbitt and Defendant the D.C. Department of Health an unfettered discretionary authority to grant exceptions to the mask policy.

104. As of the filing of the Complaint, Defendants have failed to exercise this discretionary authority to grant the Parents' request for exceptions for their children's school or for private, parochial, or independent religious schools in the District.

105. Moreover, Defendants' mask mandate is not neutral toward ***all*** religious exercises, because it exempts exempting one type of religious exercise

(houses of worship) from the restrictive masking requirement while burdening another type of religious exercise (religious education).

106.    Defendants do not have a compelling reason for burdening the Parents' schoolchildren who attend Catholic schools and subjecting them to worse treatment than other types of activities, such as sitting at a restaurant, attending a sporting event, working in an office space, going to a packed concert hall, or even attending Mass.

107.    Defendants also do not have a compelling reason for refusing to grant discretionary exceptions for private religious schools located in the District.

108.    Defendants also do not have a compelling reason for treating one type of religious exercise (houses of worship) more favorably than another type of religious exercise (religious education).

109.    Absent injunctive and declaratory relief against Defendants, the Parents and their children will continue to suffer irreparable harm.

110.    The Parents and their children have suffered injuries that should be remedied with appropriate relief.

### Count II
### 42 U.S.C. § 2000bb-1
### Violation of the Religious Freedom Restoration Act

111.    The Parents incorporate by reference Paragraphs 1–92.

112.    Defendants' school mask mandate violates the RFRA.

113.    RFRA provides "very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014).

114.    The District of Columbia is a covered entity under RFRA.  42 U.S.C. § 2000bb-2(2).

115.    Defendants—the District of Columbia, D.C. Department of Health, Mayor Bowser, and Director Nesbitt—all constitute "government" under the meaning of RFRA.  *Id.* § 2000bb-2(1).

116.    Under RFRA, "[g]overnment shall not substantially burden a person's exercise of religion," unless "it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Id.* § 2000bb-1(a)–(b).

117.    RFRA defines "exercise of religion" to "include[ ] any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  *Id.* § 2000cc-5(7)(A); *see also id.* § 2000bb-2(4).

118.    RFRA's definition of—and protection for—religious exercise "shall be construed in favor of a broad protection of religious exercise."  *Id.* § 2000cc-3(g).

119.    The Parents' Catholic faith compels them to educate their children in their faith.

120.    Defendants' mask mandate substantially burdens this exercise of faith.

121.    Defendants cannot satisfy strict scrutiny.

122.    Defendants have no compelling interest to deny an exception to private, parochial, or independent religious schools while they do not impose the mask

mandate at restaurants, sporting events, plays, concerts, night clubs, gyms, business offices spaces, and many other venues.

123.    Defendants have less restrictive means of achieving any governmental interests they have other than imposing the mask mandate on private, parochial, or independent religious schools.

124.    Absent injunctive and declaratory relief against Defendants, the Parents and their children will continue to suffer irreparable harm.

125.    The Parents and their children have suffered injuries that should be remedied with appropriate relief.

**COUNT III**
**42 U.S.C. § 1983**
**Infringement of the fundamental right to direct the upbringing and education of children under the First and Fifth Amendments.**

126.    The Parents incorporate by reference Paragraphs 1–92.

127.    Defendants' mask policy violates the Parents' fundamental right to direct the religious upbringing and education of their children.

128.    The First Amendment protects the parents' right to direct the "religious upbringing and education of their minor children." *Wisconsin v. Yoder*, 406 U.S. 205, 231 (1972).

129.    The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

130.    In other words, the Constitution protects the parents' fundamental right to direct their children's education, regardless of whether the right is formally grounded in the text of the First Amendment, *see Espinoza v. Mont. Dep't of Revenue*,

140 S. Ct. 2246, 2261, or from the Supreme Court's Due Process Clause jurisprudence, *see Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925).

131.    An infringement of the parents' fundamental right to direct the education and upbringing of their children triggers strict scrutiny.  *See Yoder*, 406 U.S. at 231.

132.    Defendants cannot satisfy strict scrutiny

133.    Absent injunctive and declaratory relief against Defendants, the Parents and their children will continue to suffer irreparable harm.

134.    The Parents and their children have suffered injuries that should be remedied with appropriate relief.

### PRAYER FOR RELIEF

Wherefore, the Parents request that the Court:

a.    Declare that the Mayor's Order 2022-029's mask mandate is void and violates the First Amendment's Free Exercise Clause, the Fifth Amendment's Due Process Clause, and the Religious Freedom Restoration [g];

b.    Issue temporary, preliminary, and permanent injunctive relief (1) prohibiting Defendants from enforcing their unlawful policies; (2) requiring Defendants to recognize an exception to the mask mandate for religious schools in the District; and/or (3) prohibiting Defendants from engaging in any activities that substantially burden or infringe upon the Parents' rights under the First Amendment, and the Fifth Amendment, and the Religious Freedom Restoration Act;

c.    Award nominal damages to the Parents;

28

d.      Award the Parents costs and attorney's fees; and

e.      Award any further relief as the Court deems equitable and just.

## JURY DEMAND

The Parents hereby request a trial by jury on all issues so triable.


Dated: March 7, 2022                    Respectfully submitted,

                                        */s/Matthew S. Bowman*
                                        David A. Cortman (DC Bar No. 54654)
                                        Matthew S. Bowman (DC Bar No. 993261)
                                        Frank H. Chang (DC Bar No. 1686578)***
                                        Paul D. Schmitt (IL Bar No 6328780)*, **
                                        ALLIANCE DEFENDING FREEDOM
                                        440 First Street NW, Suite 600
                                        Washington, DC 20001

                                        Ryan J. Tucker (AZ Bar No. 034382)*
                                        ALLIANCE DEFENDING FREEDOM
                                        15100 N. 90th Street
                                        Scottsdale, AZ 85260

                                        *Pro Hac Vice Motion Forthcoming*
                                        ** *Federal Court Practice Only*
                                        *** *Admission Pending*

                                        *Counsel for Plaintiffs*

**VERIFICATION**

I, Sheila Dugan, a citizen of the United States and a resident of the Maryland, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and that the statements contained therein are true and correct.

Dated this 6 day of March, 2022, in Bethesda, Maryland.

Sheila Dugan

Sheila Dugan

## **VERIFICATION**

I, Matthew Johnson, a citizen of the United States and a resident of the Maryland, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and that the statements contained therein are true and correct.

Dated this 6th day of March, 2022, at Chevy Chase, Maryland.

_____

Matthew Johnson